**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVINA IRENE RONQUILLO,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:19-cv-1665 JLT<br><br>ORDER DENYING PLAINTIFF'S APPEAL AND AFFIRMING THE ADMINISTRATIVE DECISION (Doc. 17)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF DAVINA IRENE RONQUILLO |

    Davina Irene Ronquillo asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and finding she could perform work existing in significant numbers in the national economy. For the following reasons, the administrative decision is **AFFIRMED**.

**BACKGROUND**

    Plaintiff received supplemental security income benefits for disability as a child. (*See* Doc. 10-5 at 2) After she reached the age of 18, Plaintiff's "eligibility for these disability benefits was redetermined under the rules for determining disability in adults." (Doc. 10-3 at 24) Plaintiff asserted she was "disabled because of Guillain Barre Syndrome and leg braces." (Doc. 10-5 at 22) The Social Security Administration found Plaintiff's medical records showed she was "able to walk and move about with the use of … orthosis support," and Plaintiff did not have "any other impairment which would significantly restrict [her] from performing work related functions." (*Id.*) Thus, the

1  Administration concluded that "[u]nder the disability rules for adults [Plaintiff was] no longer disabled
2  as of December 1, 2016." (*Id.* at 23)  Plaintiff requested reconsideration, and the Administration
3  scheduled a hearing for Plaintiff with a disability hearing officer. (*Id.* at 29, 32)  She did not appear at
4  the hearing. (*Id.* at 38-39)  The disability hearing officer reviewed available records and issued an
5  order finding Plaintiff was "Not Disabled" on May 24, 2017. (*Id.* at 42-46)  Thus, the determination
6  was upheld at the reconsideration level.

7  Plaintiff filed a written request for a hearing before an administrative law judge and appeared
8  at the hearing on April 27, 2018. (*See* Doc. 10-3 at 24, 38)  The ALJ determined Plaintiff was not
9  disabled under the Social Security Act and issued an order denying benefits on July 5, 2018. (*Id.* at 24-
10 31)  Plaintiff filed a request for review of the decision with the Appeals Council, which denied her
11 request on August 12, 2019. (*Id.* at 7-11)  Therefore, the ALJ's determination became the final
12 decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.[1] *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this process, the ALJ determined Plaintiff's severe impairments included: "status post Guillen-Barre disease and bilateral foot drop." (Doc. 10-3 at 26) At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a Listing. (*Id.*) Next, the ALJ determined:

> [S]ince December 1, 2016, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she will need to alternate sitting and standing every 30 minutes, can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, never balance, crouch or crawl, occasionally stoop and kneel, cannot operate foot controls and must avoid all exposure to unprotected heights or moving machinery.

---

[1] The first step is not used when, as here, the ALJ evaluates the claim of an individual who received disability benefits as a minor to determine whether she should continue to receive benefits as adult. 20 C.F.R. § 416.987(b).

(*Id.* at 27)  Because Plaintiff did not have past relevant work, the ALJ continued to step five.  (*Id.* at 29)  With this residual functional capacity ("RFC"), the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including document preparer, table worker, and production worker.  (*Id.* at 30)  Thus, the ALJ concluded Plaintiff's "disability ended on December 1, 2016," and Plaintiff had "not become disabled again since that date."  (*Id.* at 32)

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ committed reversible error by violating agency policy by having an administrative expert testify at the beginning of the administrative hearing.  (Doc. 17 at 7)  Further, Plaintiff contends "[t]he ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints."  (*Id.* at 10, emphasis omitted)  Plaintiff also argues the ALJ erred by finding at step five that she is able to perform work existing in significant numbers in the national economy.  (*Id.* at 9-10)  The Commissioner argues the Court should affirm the administrative decision because "[s]ubstantial evidence supports the ALJ's decision, and the ALJ's decision is free of legal error."  (Doc. 19 at 15; *see also id.* at 7-14)

**A.     Compliance with HALLEX**

The Commissioner's *Hearings, Appeals, and Litigation Manual*, commonly referred to as "HALLEX" is "an internal Social Security Administration policy manual." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010).  Plaintiff asserts that the ALJ violated HALLEX by "having the medical expert testify without the benefit of hearing [Plaintiff's] testimony." (Doc. 17 at 8). Plaintiff observes that under HALLEX § 1-2-6-70,

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, the ALJ will summarize the testimony for the ME on the record. If additional medical evidence is received at the hearing, the ALJ will provide it to the ME for review before the ME testifies.

(Doc. 17 at 8, quoting HALLEX I-2-6-70(b), *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-70.html (last visited Feb. 12, 2021))  Thus, Plaintiff asserts "prior to testifying, the ME must have heard, seen, or evaluated all of the evidence of record, including the claimant's own testimony."  (*Id.*). Because the ALJ called the medical expert to testify at the beginning of the hearing—prior to Plaintiff

4

testifying—Plaintiff asserts the ALJ acted "in direct violation of HALLEX I-2-6-70(b)." (*Id.* at 8)

Plaintiff contends under Social Security Ruling (SSR) 13-2p, "[t]he Agency itself has mandated that an ALJ is obligated to follow SSA policies as set forth in the HALLEX." (Doc. 17 at 8, citing SSR 13-2p, 2013 WL 621536). Plaintiff observes that SSR 13-2p provides: "[w]e require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)." (*Id.*, quoting SSR 13-2p, 2013 WL 621536 at *15 [emphasis omitted]). Anticipating the Commissioner "may rely upon case law pre-dating its issuance of SSR 13-2p to argue that the HALLEX is not judicially enforceable," Plaintiff asserts that SSR 13-2p is "an Agency ruling subsequent to the case law which may state the contrary, is clearly binding on the Agency as a matter of law." (*Id.*, citing *Kolvick v. Astrue*, 2011 WL 4626014 at *9 (W.D. Wa. Jul. 2011) (stating "there is nothing in *Lockwood* to support the proposition that an ALJ, or this Court, may ignore the applicable SSRs") (internal citation omitted).

The Commissioner argues the ALJ did not commit reversible error by calling the medical expert at the beginning of the hearing, because "the Ninth Circuit has held that HALLEX does not impose "judicially enforceable duties." (Doc. 19 at 7, quoting *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003)) Further, the Commissioner observes SSR 13-2p "clarifies how the Commissioner determines whether drug addiction is a contributing factor material to the determination of disability," and there is no indication that the purpose of the SSR was to make HALLEX judicially enforceable. (*Id.*) The Commissioner notes "courts have considered and rejected Plaintiff's argument that, because SSR 13-2p made the HALLEX judicially enforceable, the court should remand for having an ME testify at the beginning of a hearing." (Doc. 19 at 7, citing, *e.g.*, *Hollen v. Comm'r of Soc. Sec.*, 2017 WL 1075194 at *8 (S.D. Cal. Mar. 22, 2017); *Kathleen S. v. Saul*, 2020 WL 353602 at *8 (S.D. Cal. Jan. 21, 2020), *adopted* 2020 WL 2848150 (S.D. Cal. June 2, 2020)).

Significantly, as the Commissioner observes, the Ninth Circuit determined failure to comply with HALLEX standards is not a reversible error because "HALLEX is strictly an internal guidance tool." *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000). Thus, the Ninth Circuit determined

"HALLEX does not impose judicially enforceable duties on either the ALJ or th[e] court." *Lockwood v. Comm'r*, 616 F.3d 1068, 1072 (9th Cir. 2010); *see also Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (observing HALLEX does not "impose[] judicially enforceable duties"). The Court indicated that because HALLEX "does not prescribe substantive rules and therefore does not carry the force and effect of law," it would not "review allegations of noncompliance with the manual." *Moore*, 216 F.3d at 868; *see also Roberts v. Comm'r of the SSA*, 664 F.3d 931, 933 (9th Cir. 2011) (noting the claimant asserted the ALJ failed to comply with HALLEX, and declining to "review allegations of noncompliance with its provisions")

Notably, SSR 13-2p explicitly states that it relates to "evaluating cases involving drug addiction and alcoholism (DAA)." SSR 13-2p, 2013 WL 621536. In addition, the Agency indicated that SSR 13-2p "consolidate[d] information from a variety of sources to explain our DAA policy." *Id.*, 2013 WL 621536 at *2. Here, there is nothing in the record indicating that Plaintiff was suffering from drug addiction and alcoholism, such that SSR 13-2p was applicable to the claim before the ALJ. Regardless, "even after the promulgation of SSR 13-2p on February 20, 2013, the Ninth Circuit has continued to cite *Roberts* and *Lockwood* for the proposition that the Agency's internal policy manuals such as HALLEX do not give rise to any legally enforceable rights." *Kathleen S. v. Saul*, 2020 WL 353602, at *7 (S.D. Cal. Jan. 21, 2020).

The Ninth Circuit has maintained its determination that HALLEX "does not carry the force of law." *See, e.g.*, *Wilson v. Berryhill*, 732 Fed. App'x 504, 507 (9th Cir. 2018) (declining to review an assertion of error for failure to comply with HALLEX); *see also McGowan v. Saul*, 833 Fed. App'x 138 (9th Cir. Jan. 6, 2021) (finding the ALJ "did not commit reversible error" by failing to comply with HALLEX "because the ALJ's noncompliance with HALLEX is not legally enforceable"); *Barreras v. Saul*, 803 Fed. App'x 70 (9th Cir. 2020) (finding it was "inconsequential" that the ALJ acted contrary to policies in HALLEX because the manual does not "impose[] judicially enforceable duties on either the ALJ or this court") (citation omitted). Because HALLEX is not legally enforceable, Plaintiff is unable to show reversible error for any failure by the ALJ to comply with the standards related to obtaining medical expert testimony. *See Roberts*, 664 F.3d at 933 (declining to "review allegations of noncompliance" with HALLEX); *Moore*, 216 F.3d at 868 (same).

**B.     Limitations to which Plaintiff Testified and the RFC**

At the hearing, Plaintiff testified she could stand and walk for "probably an hour" before she needed to take a break due to pain. (Doc. 10-3 at 54)  She estimated the heaviest thing she could lift and carry was "like 15 pounds." (*Id.* at 60)  Plaintiff stated she could not climb stairs "for too long" because she "won't make it." (*Id.* at 62) She reported that she was "very limited in doing things" and tried to keep busy, "hang out at parks and take care of [her] little brothers and that's basically it." (*Id.* at 59)  Plaintiff reported she also loved cooking and baking, but it was "hard for [her] to stand and hold [her] balance" to clean the bathroom. (*Id.* at 59-60)

Plaintiff asserts that the ALJ erred in addressing her testimony at the administrative hearing. (Doc. 17 at 10-11)  According to Plaintiff "[t]he ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints." (*Id.*, emphasis omitted).  The Commissioner argues that "[t]he ALJ properly evaluated Plaintiff's testimony" and substantial evidence supported the decision. (Doc. 19 at 12-13)

Significantly, Plaintiff fails to identify the subjective complaints and limitations addressed in Plaintiff's testimony that she believes should have been incorporated into the residual functional capacity by the ALJ.  Previously, the Ninth Circuit "reject[ed] any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way" where "the RFC include[d] several physical limitations." *See Valentine v. Astrue,* 574 F.3d 685, 692 n.2 (9th Cir. 2009).  In *Valentine*, the claimant asserted the ALJ failed to account for his injuries in the RFC yet failed to identify "what other physical limitations follow[ed]…, besides the limitations already listed in the RFC." *Id*. Similarly here, the RFC included physical limitations—including a limitation to sedentary work, an option to sit and stand, and postural limitations (Doc. 10-3 at 27)—and Plaintiff fails to identify specific functional limitations she believes should have been incorporated in the RFC based upon her testimony.

District courts throughout the Ninth Circuit determined failure to identify specific limitations that should have been incorporated into a residual functional capacity is fatal to a claimant's challenge of the ALJ's findings.  *See, e.g.*, *Juarez v. Colvin*, 2014 WL 1155408 at *5 (C.D. Cal. Mar. 20, 2014) (rejecting an argument that the ALJ erred in evaluating the claimant's limitations where she had "not

specified or proffered evidence of any additional limitations from the arthritis that the ALJ failed to consider"); *Thomas v. Comm'r of SSA,* 2015 WL 4603872 at *8 (D. Or. July 13, 2015) (finding the claimant failed to show error in the RFC where the claimant did not identify any limitations "beyond those already listed in his RFC" related to his allegations of pain); *Hansen v. Berryhill,* 2018 WL 721660 at *4 (W.D. Wash. Feb. 6, 2018) ("Although Plaintiff argues that the ALJ erred in failing to account for the limitations caused by his ADHD in the RFC assessment, he does not identify which limitations were erroneously omitted, and has thus failed to state an allegation of error"); *Anderson v. Colvin,* 2015 WL 1194625 at *10 (D. Idaho Mar. 16, 2015) (declining to review the RFC where the plaintiff failed to "specify which cumulative functional limitations were omitted from the RFC," though he claimed the RFC "failed to address the synergistic effects of his schizoaffective and bipolar disorders combined with his functional impairments").

Plaintiff contends the ALJ rejected her subjective complaints "regarding severity and limitations" and failed to include work-related limitations in her RFC that were consistent with her testimony. (Doc. 17 at 10)  However, Plaintiff does not identify any specific functional limitations caused by her pain and the severity of her symptoms that were not incorporated into the RFC.  The Court is unable to speculate as what limitations Plaintiff believes the ALJ should have incorporated into the RFC based upon her hearing testimony. *See Valentine,* 574 F.3d at 692 n.2; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting the Court "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant'").

To the contrary, it appears the RFC identified by the ALJ addresses the limitations to which Plaintiff testified.  For example, Plaintiff testified that she could stand and walk up to one hour at a time and lift up to 15 pounds. (Doc. 10-3 at 54, 60)  The ALJ limited Plaintiff to sedentary work, "which involves sitting" and "lifting no more than 10 pounds at a time." 20 C.F.R. § 416.967(a).  In addition, Plaintiff testified she could not climb stairs "for too long." (Doc. 10-3 at 62)  The ALJ included postural limitations in the RFC and indicated Plaintiff could "occasionally climb ramps and stairs" but "never climb ladders, ropes, or scaffolds." (*Id.* at 27)  Furthermore, Plaintiff testified she had difficulty cleaning due to balance (*id.* at 60), and the ALJ indicated in the RFC that Plaintiff could "never balance." (*Id.* at 27).  Because Plaintiff fails to identify any specific limitations to which she

8

testified that were unaccounted for in the RFC, Plaintiff fails to show any error in the ALJ's analysis of her subjective complaints. *See Valentine*, 574 F.3d at 692.

### C. Step Five Findings

At step five, the burden shifts to the Commissioner to show Plaintiff can engage in substantial gainful activity and a "significant number of jobs exist in the national economy" that Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon the *Dictionary of Occupational Titles* ("DOT"), which classifies jobs by their exertional and skill requirements. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 404.1566(d)(1). In the alternative, the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

The ALJ called a vocational expert at the administrative hearing to determine "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity, since December 1, 2016." (Doc. 10-3 at 30) Gloria Lasoff, the vocational expert, testified an individual with Plaintiff's age, education, and residual functional capacity was capable of sedentary work including document preparer, DOT 249.587-018; table worker, DOT 739.687-182; and production worker, DOT 734.687-074. (*Id.* at 64-66) The VE indicated there were 44,000 jobs available nationally for document preparers; 10,000 table worker positions nationally; and 20,000 production worker positions in the national economy. (*Id.* at 65) The VE opined an individual—such as Plaintiff—who needed the option to sit or stand could perform these sedentary positions, but she "would erode… the numbers by approximately 20 percent." (*Id.* at 66) The ALJ determined that, "[b]ased on the testimony of the vocational expert," Plaintiff was capable of performing "work that exists in significant numbers in the national economy." (*Id.* at 30)

Plaintiff asserts the ALJ erred at step five because "the ALJ failed to acknowledge the expert's testimony that the available jobs would be eroded by the need to alternate sitting and standing at 30 minutes, despite including this limitation in the RFC." (Doc. 17 at 9) In addition, Plaintiff argues the evidence "is insufficient to establish that a 'significant number' of jobs exist, because the job of

'document preparer' has long been obsolete, and the remaining jobs at Step Five do not exist in significant numbers in the national economy." (*Id.*) According to Plaintiff, once the position of document preparer is eliminated and the erosion is applied, "the remaining jobs of 'table worker' and 'production worker' total only 24,000 jobs nationally, which is insufficient to constitute a 'significant number' of jobs." (*Id.* at 10, citing *Gutierrez v. Commr. of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014)). Therefore, Plaintiff asserts the ALJ failed at step five. to "establish that a significant number of jobs exist in the national economy that Plaintiff could perform." (*Id.*)

### 1.      Document preparer positions

Plaintiff asserts that "[c]ourts have found that the occupation of 'document preparer' is obsolete." (Doc. 17 at 10, citing *Sandra M. H. v. Saul*, 2019 WL 5209245, at *3 (C.D. Cal. Oct. 16, 2019); *Skinner v. Berryhill*, 2018 WL 1631275, at *5 (C.D. Cal. Apr. 2, 2018); and *Rhoades v. Comm'r of Soc. Sec.*, 2019 WL 3035517, at *1 (E.D. Cal. July 11, 2019).

In response, the Commissioner argues that "[t]he document preparer occupation is not obsolete, and the cases cited by Plaintiff "do not hold that the occupation… was obsolete." (Doc. 19 at 9, emphasis omitted) The Commissioner observes:

> In *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *4 (C.D. Cal. Apr. 2, 2018), the court held that the document preparer job was inconsistent with a limitation to simple, repetitive work and the addresser occupation was obsolete. In *Rhoades v. Comm'r of Soc. Sec.*, No. 2:18-CV-1264-KJN, 2019 WL 3035517, at *1 (E.D. Cal. July 11, 2019), report and recommendation adopted, No. 2:18-CV-1264-JAM KJN, 2019 WL 4605713 (E.D. Cal. Aug. 8, 2019), the claimant alleged that the two occupations identified by the VE, addresser and document preparer were obsolete *and* that the document preparer occupation was inconsistent with the claimant's RFC. Thus, it was analogous to the *Skinner* case. The Commissioner moved for remand in the case, and the only issue before the Court was remedy. *Id.* At no point did the Court hold or the Commissioner concede that the document preparer occupation. *Id.*

(Doc. 19 at 9-10) Further, the Commissioner notes several courts affirmed "decisions that relied on the document preparer occupation at step five." (*Id.* at 10, citing, e.g., *Wyatt C. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 4600289, at *4 (D. Or. Sept. 22, 2018) (holding the document preparer occupation involved digitizing documents, satisfied claimant's RFC, and existed in significant numbers in the national economy); *Gail v. Saul*, 2020 WL 4754539, at *2 (C.D. Cal. Aug. 17, 2020); *Baylor v. Saul*, 2020 WL 2475798, at *8 (D. Nev. May 13, 2020).

Previously, this Court rejected an argument from a claimant that the document preparer

position is obsolete, because "courts generally have not made such a determination." *Rivota v. Saul*, 2020 WL 1306985 at *8 (E.D. Cal. Mar. 19, 2020). Notably the *Dictionary of Occupational Titles* is published by the United States Department of Labor and is the "'primary source of reliable information' regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 788 F.3d 842, 845-46 (9th Cir. 2015), quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). As such, the *Dictionary of Occupational Titles*—which indicates the position of document preparer remains in the national economy—is entitled to deference. *See* 20 C.F.R. § 404.1566(d)(1) (indicating the agency will "take administrative notice" of information from the *Dictionary of Occupational Titles*). The vocational expert testified there were 44,000 document preparer positions remain in the national economy (Doc. 10-3 at 65), and Plaintiff did not present any evidence that undermines the vocational resources. Based upon the *Dictionary of Occupational Titles* and the testimony of the vocational expert, the Court declines to find the position of document preparer is obsolete.

        2.      Number of table worker and production worker jobs

Even if the Court were to omit the document preparer positions and considered only the table worker and production worker positions, the jobs Plaintiff could perform exist in significant number in the national economy. As Plaintiff observes, there would be 24,000 jobs between the two positions.

Importantly, there is no "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012); *see also Young v. Astrue*, 591 Fed. App'x 769, 772 (3rd Cir. 2013) (noting "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act"). Nationwide figures necessarily require a greater total to constitute a "significant" number, as the jobs exist across "several regions" of the country. *See id.* at 389-90.

The Ninth Circuit determined 25,000 jobs in the national economy was sufficient to meet this standard. *See Gutierrez v. Comm'r,* 740 F.3d 519, 523 (9th Cir. 2014). This court and others have also determined that 15,000 or more jobs are a "significant number" in the national economy. *See, e.g., Davis v. Comm'r*, 2018 WL 1779341 at *6 (E.D. Cal. Apr. 12, 2018) (finding 15,000 national jobs to be significant number); *Jeter v. Berryhill*, 2018 WL 2121831 at *3 (C.D. Cal. May 8, 2018) ("Although at the low end, the ALJ's finding as to [20,000] national jobs meets the legal standard"); *see also Young*, 591 Fed. App'x at 772 (finding the amount of 20,000 jobs was "sufficient to support a

finding that work exists in significant numbers"). Thus, the Court finds that the number of table worker and production worker positions establishes a significant number of jobs in the national economy. *See Davis*, 2018 WL 1779341 at *6; *Acuna v. Colvin,* 2015 WL 7566624 at *3 (C.D. Cal. Nov. 24, 2015) (rejecting the argument that *Gutierrez* established a "baseline" number and finding 24,000 jobs in the national economy was a significant number). Consequently, the record establishes that Plaintiff is able to perform work existing in significant number in the national economy.

**CONCLUSION AND ORDER**

For the reasons set for above, Plaintiff fails to show the ALJ committed any reversible legal error, and the determination that Plaintiff is not disabled must be upheld by the Court. *Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. Plaintiff's appeal of the decision denying benefits (Doc. 17) is **DENIED**;
2. The decision of the Commissioner of Social Security is **AFFIRMED**; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Andrew Saul, the Commissioner of Social Security, and against Plaintiff Davina Irene Ronquillo.

IT IS SO ORDERED.

Dated:   **February 16, 2021**            **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE